IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

KENNETH W. ANDERSON,    §
    §
    Plaintiff,    §
    §
v.    §    2:03-CV-0085
    §
JO ANNE BARNHART,    §
Commissioner of Social Security,    §
    §
    Defendant.    §

## REPORT AND RECOMMENDATION

Plaintiff KENNETH W. ANDERSON, brings this cause of action pursuant to 42 U.S.C.

§ 405(g), seeking review of a final decision of defendant JO ANNE BARNHART,

Commissioner of Social Security (Commissioner), denying plaintiff's application for a term of

disability, and disability benefits.  Both parties have filed briefs in this cause.  For the reasons

hereinafter expressed, the undersigned United States Magistrate Judge recommends the

Commissioner's decision finding plaintiff not disabled and not entitled to benefits be

AFFIRMED.

I.
THE RECORD

Plaintiff applied for  supplemental security income benefits (SSI) and disability insurance

benefits under Titles II and XVI of the Social Security Act on July 17, 2001 with a protected

filing date of July 13, 2001.  (Transcript [hereinafter Tr.] 49-52).  Plaintiff claims to have injuries

including carpal tunnel syndrome in both hands, replacement of the right elbow ulnar nerve, and

post-operative back impairments.  (Tr. 14, 66, 159; Plaintiff's Brief at 2-3).  Several onset dates

have been cited in the record dating as far back as November 27, 1995 (Tr. 49, 61).  However, it

appears plaintiff had applied for and been denied benefits on December 31, 1998.  The record

reflects plaintiff quit working on either June 10, 2001 or June 15, 2001.  (Tr. 66).  As articulated

by defendant, for the purposes of this appeal, the period at issue dates from the date plaintiff

protectively filed his application, July 13, 2001, until the date of the Administrative Law Judge's

(ALJ) decision, October 21, 2002.  *See* 42 U.S.C. §1382(c)(7); 20 C.F.R. §416.335 and

§416.501.

It was determined at the administrative level that plaintiff had not engaged in substantial

gainful activity since the date he protectively filed for SSI benefits.  (Tr. 14, 18).  Plaintiff was

born October 16, 1963 (Tr. 49, 180), and attended school through the eighth grade.  (Tr. 182).

The record reflects plaintiff's only past relevant work is the job of mechanic. (Tr. 14, 182).

Plaintiff filed a Request for Hearing before an Administrative Law Judge and a hearing

was held on September 12, 2002 before ALJ William F. Nail, Jr.  (Tr. 176-208).  On October 21,

2002, ALJ Nail, Jr. rendered an unfavorable decision, finding plaintiff not entitled to benefits at

any time relevant to the decision.  (Tr. 19).  The ALJ determined plaintiff was unable to return to

his past relevant work.  (Tr. 19, Finding #7).  The ALJ further found plaintiff to have,

> [T]he residual functional capacity to perform a limited range of light work.  He
> has carpal tunnel syndrome in his hands and cannot perform work requiring
> continuous hand use.

(Tr. 19, Finding #6).[1]  In making such findings the ALJ determined plaintiff could perform a

significant numbers of jobs in the national economy including *laundry folder*, *sales attendant*,

*shipping and receiving weigher*, and *surveillance system monitor*.  (Tr. 18).  The ALJ thus

concluded plaintiff was not under a disability at any time through the date of his decision.

On January 24, 2003, the Appeals Council denied plaintiff's request for review of the

decision of the ALJ, rendering the ALJ's decision the final decision of the defendant

Commissioner.  (Tr. 5-7).[2]  Plaintiff now seeks judicial review of the denial of benefits pursuant

to 42 U.S.C. §405(g).

II.
STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this court's role is limited to

determining whether substantial evidence exists in the record, considered as a whole, to support

the Commissioner's factual findings and whether any errors of law were made.  *Anderson v.*

*Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989).  To determine whether substantial evidence of

disability exists, four elements of proof must be weighed: (1) objective medical facts;

(2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective

evidence of pain and disability; and (4) claimant's age, education, and work history.  *Wren v.*

*Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94(5th

Cir. 1972)).  If the Commissioner's findings are supported by substantial evidence, they are

---

[1]The ALJ also has at Tr. 19, Finding #11 which says, "The claimant has the residual functional capacity to perform a significant range of light work.  20 CFR §416.967."  While these may be construed as inconsistent, the Court understands the ALJ to have relied on Finding #6 which benefits plaintiff since it is more restrictive.

[2]A review of the record Tr. at 5-7, includes a very light date stamp which is illegible.  According to the "Court Transcript Index" the reporter has listed such date as January 24, 2003.

conclusive, and the reviewing court may not substitute its own judgment for that of the

Commissioner, even if the court determines the evidence preponderates toward a different

finding.  *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980).  Conflicts in the evidence are

to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th

Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical

evidence" will produce a finding of no substantial evidence.  *Hames v. Heckler*, 707 F.2d at 164.

Stated differently, the level of review is not *de novo*.  The fact that the ALJ <u>could</u> have found

plaintiff to be disabled is not the issue.  The ALJ did not do this, and the case comes to federal

court with the issue being limited to whether there was substantial evidence to support the ALJ

decision.


III.
<u>MERITS</u>

Plaintiff's brief in support of his application presents the following issues for review:

      A.      The ALJ erred when he determined plaintiff did not have a listed
              impairment under Listing 1.02;

      B.      The ALJ erred when he failed to adopt the views of physicians who stated
              plaintiff was disabled due to pain; and

      C.      The hypothetical posed to the Vocational Expert was defective.

The ALJ made the determination that plaintiff is not disabled at Step Five of the five-step

sequential analysis.  Therefore, this Court is limited to reviewing only whether there was

substantial evidence in the record as a whole supporting a finding that plaintiff retained the

ability to perform other work that exists in significant numbers in the national economy, and

whether the proper legal standards were applied in reaching this decision.

A.

Listed Impairment

Plaintiff argues the ALJ erred because he failed to find plaintiff's bilateral carpal tunnel

syndrome met Listing 1.02B.  Such Listing states,

> *Major dysfunction of a joint(s) (due to any cause)*: Characterized by gross
> anatomical deformity (e.g. subluxation, contracture, bony or fibrous ankylosis,
> instability) and chronic joint pain and stiffness with signs of limitation of motion
> or other abnormal motion of the affected joint(s), and findings on appropriate
> medically acceptable imaging of joint space narrowing, bony destruction, or
> ankylosis of the affected joint(s).  With:
>
> ....
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e.
> shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross
> movements effectively as defined in 1.00B2c.

20 C.F.R. Pt. 404, Subpt. P, App. 1. Listing 1.02.  The inability to "perform fine and gross

movements effectively," as explained in the listings means,

> [A]n extreme loss of function of both upper extremities; i.e., an impairment(s)
> that interferes very seriously with the individual's ability to independently
> initiate, sustain, or complete activities.  To use their upper extremities effectively,
> individuals must be capable of sustaining such functions as reaching, pushing,
> pulling, grasping, and fingering to be able to carry out activities of daily living.
> Therefore, examples of inability to perform fine and gross movements effectively
> include but are not limited to, the inability to prepare a simple meal and feed
> oneself, the inability to take care of personal hygiene, the inability to sort and
> handle papers or files, and the inability to place files in a file cabinet at or above
> waist level.

20 C.F.R. Pt. 404, Subpt. P, App. 1. Listing 1.00B2c.  Although plaintiff testified he drops

objects and has no feeling in his fingers or that they "draw up" (Tr. 184), he also admitted under

oath he can drive up to five times a week, for example to go to the store (Tr. 187), he can

occasionally eat out (Tr. 189), he sometimes helps with housework like cooking, cleaning and

dish washing, he mows the yard, and helps with the laundry (Tr. 190).  He further testified he

can generally shower by himself, dress himself (with the assistance of his daughter who ties his

shoes), can take care of his own hygiene (brushing teeth and shaving) and can feed himself.  (Tr.

192).  It does not appear from plaintiff's own testimony he meets the requirements of Listing

1.02.  Further, as articulated by defendant, plaintiff was evaluated by Dr. Ivan Mahady on

November 13, 2001 who found plaintiff could fully extend his hands, he could make a fist, he

had normal grip strength in both hands had no sign of atrophy.  (Tr. 132-133).  The doctor's

notes also reflect that upon questioning plaintiff stated that he could not hold a skillet or a broom

and he could not hold his hands over his head, but that he could write, hold a cup of coffee, open

a jar, and button his own shirt.  (Tr. 130).  Plaintiff has directed the Court to the findings of

physician Dean Brown, D.O., who reported on November 6, 2002 that plaintiff had undergone

surgery for carpal tunnel syndrome with an ulnar nerve transplant due to ulnar nerve syndrome,

that plaintiff still suffered from arm, upper back and neck pain with numbness in his hands, and

that plaintiff was unable to engage in work involving bending, stooping, lifting or grasping "for

at least a year longer."  (Tr. 173).  As argued by defendant, these functional limitations are

contrary to plaintiff's own description of his daily activities.  (Defendant's Brief at 7).  The

medical records and plaintiff's own testimony of his abilities contradict the limitations set forth

in the regulations for Listing 1.02 and plaintiff has not shown himself to be incapable of

performing fine and gross movements to the degree contemplated by 20 C.F.R. Pt. 404, Subpt. P,

App. 1. Listing 1.00B2c.  Plaintiff's first claim fails.

B.
Plaintiff's Pain and the Medical Opinions of Record

Plaintiff next argues his, "claim is primarily based upon severe pain [which is] greatly

aggravated by any long-continued physical exertion."  (Plaintiff's Brief at 5).  The ALJ

considered plaintiff's subjective complaints of pain but found, based upon the medical evidence,

such complaints lacked credibility, a determination within the jurisdiction of the ALJ.  The ALJ

stated,

> Specifically, while the claimant alleges severe, disabling back pain, objective
> findings on physical examination and radiology studies have been minimal.  MRI
> studies of the lumbar spine performed on September 15, 2001, revealed an
> abnormal signal at L4-5, but noted no definite herniated or extruded discs.
>
> A CT scan of the lumbar spine performed on October 19, 2001, did show a filling
> defect at L4-5 suggesting left-sided disc herniation causing impingement of the
> left L5 existing nerve root.  However, the T-12-L1, L1, L2-3, and L3-4 disc
> spaces were all well maintained.
>
> X-rays of the lumbar spine performed on November 13, 2001, revealed an
> essentially normal lumbar spine.

(Internal citations omitted, replaced with Tr. cites)(Tr. 127-129; 135).  As argued by defendant,

the ALJ is not required to accept plaintiff's subjective complaints of debilitating pain but is

required to evaluate such complaints in the context of the medical evidence to determine whether

pain is debilitating.  (Defendant's Brief at 8, citing *Loya v. Heckler*, 707 F.2d 211, 214 (5th Cir.

1983)).  Based upon the ALJ's opinion, the medical evidence cited therein, and plaintiff's own

testimony about his daily activities, it cannot be said the ALJ erred in his credibility finding.

Plaintiff's claim is without merit.

C.
Plaintiff's Limitations and the Hypothetical

Finally, plaintiff argues the ALJ erred procedurally because he failed to fully and

adequately present all of plaintiff's limitations.  Specifically plaintiff takes issue with the ALJ's

characterization that plaintiff has the "general use of his hands," that plaintiff can lift up to ten

(10) pounds but failed to clarify whether this was occasionally or continuously, and that the ALJ

failed to question the Vocational Expert (VE) about the length of time plaintiff could perform

various activities.  (Plaintiff's Brief at 6).  At the administrative hearing, VE Pamela Bowman

was called to testify.  Prior to questioning such expert, the ALJ had the following exchange with

plaintiff:

| | |
|---|---|
| ALJ: | Mr. Anderson, if I am - - what I wrote down [INAUDIBLE] you said that you can only sit about 30, 45 minutes at a time? |
| CLMT: | Yes, sir. |
| ALJ: | That you could only stand for about two to three hours at a time? |
| CLMT: | Yes, sir. |
| ALJ: | And you lift about 10 pounds? |
| CLMT: | Yes, sir. |

(Tr. 201).  Thereafter, the VE was questioned and the following hypothetical posed:

| | |
|---|---|
| Q: | Okay.  If we were to consider then hypothetically, Ms. Bowman, the age, education, background and experience of the Claimant which we find is limited.  This individual can only lift about 10 pounds.  Has general use of his hands, but would not be able to use his hands on a continuos (sic) [basis].  Sits for about 30, 45 minutes at a time.  Stands for about two or three hours at a time.  Can read basic material, but is not highly educated.  With those limitations, would the individual described be able to do the kind of work that you described [as an automobile mechanic, medium work, lifted 50 pounds and skilled with a SPB of seven]. |
| A: | No, Your Honor. |
| Q: | Any transferable skills to jobs that would satisfy [the] hypothetical? |

A:          No, Your Honor.

Q:          How about jobs in the economy?

(Tr. 202-203).  To which the VE testiff would be capable of performing the job

of *laundry folder*, unskilled, light with 40, 500 jobs in the national economy and 2,300 jobs in

Texas, *sales attendant*, unskilled, light with 4,086,000 jobs in the national economy and 22,800

jobs in Texas, and *shipping and receiving weigher*, unskilled, light with 46,000 jobs in the

national economy and 1,600 jobs in Texas.  (Tr. 203).  The VE then reduced these job numbers,

based upon the hypothetical,  by fifty percent (50%).  (*Id*.).  Finally, the VE determined the job

of *surveillance system monitor* would also be available, such job being sedentary and unskilled

in nature.  (*Id*.).  The VE testified this job's numbers would not need to be reduced based upon

the hypothetical and there existed 803,000 jobs in the national economy and 2,100 jobs in Texas.

(Tr. 204).

Plaintiff first complains the ALJ erred because of his finding that plaintiff had the

"general use of his hands."  (Plaintiff's Brief at 5).  Plaintiff refers the Court to the records of

"the Administration's own referral physician" and alleges such physician "found" plaintiff's

general use of his hands was restricted by his inability to hold a skillet, broom or hold his hands

over his head.  Such notation, however, is not an "objective finding" by a physician, but instead

is a notation by the physician of plaintiff's subjective complaints.  (Tr. 130).  Further, as

discussed previously, the physician, Dr. Mahady, made objective findings that plaintiff could

fully extend his hands, could make a fist, had normal grip strength in both hands and had no

signs of atrophy.  (Tr. 132-133).  The doctor's notes also reflect that upon questioning plaintiff

admitted he could write, hold a cup of coffee, open a jar, and button his own shirt.  (Tr. 130).  In

a physical residual functional capacity assessment completed in December of 2001 by Dr. Scott

Spoor, plaintiff was found to have no manipulative limitations (Tr. 141), and the notes reflect,

"There is no focal weakness nor atrophy to support the severe exertional restrictions to less than

sedentary." (Tr. 144).  Also as previously discussed, plaintiff, by his own admission, testified

there were many daily living activities he could perform with his hands.  In the hypothetical, the

ALJ, based upon plaintiff's testimony and the medical records, asked the VE to consider a

person who, "has general use of his hands, but would not be able to use his hands on a continuos

(sic) [basis]." (Tr. 202).  Not only can it not be said such hypothetical was contrary to the

evidence of record, the hypothetical tracked the testimony of plaintiff himself.

Next, plaintiff complains the ALJ erred by asking the VE to consider a person who can

lift up to ten (10) pounds without clarifying whether this was occasionally or continuously.  By

plaintiff's own testimony he could lift ten (10) pounds. (Tr. 193).  Further, from the exchange

between the ALJ and the VE, it appears the ALJ did place a restriction upon the hypothetical

person's use of his hands, *i.e.* that he could not use them continuously.  While "Light work"

involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects

weighing up to 10 pounds, 20 C.F.R. § 416.967(b), "Sedentary work" involves lifting no more

than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers,

and small tools.  20 C.F.R. § 416.967(a).  The ALJ, in his findings, determined plaintiff was able

to perform a limited range of light work, stating the limitation was due to the fact plaintiff could

not perform work requiring continuous hand use. (Tr. 19, Finding #6).  Even assuming the

hypothetical utilized by the ALJ was flawed, it cannot be said such error was harmful.  One of

the jobs cited by the VE as existing in significant numbers in both the national and local

economies was that of *surveillance system monitor*, a sedentary job which did not require lifting

of anything over ten pounds and only occasional lifting of smaller objects.  Plaintiff's claim is

without merit.

Last, plaintiff complains the ALJ failed to question the Vocational Expert (VE) about the

length of time plaintiff could perform various activities including the limitations of sitting only

one to two hours, walking moderate distances and lifting only 1-5 pounds.  (Plaintiff's Brief at

6).  In his hypothetical to the VE the ALJ said,

> Okay.  If we were to consider then hypothetically, Ms. Bowman, the age,
> education, background and experience of the Claimant which we find is limited.
> This individual can only lift about 10 pounds.  Has general use of his hands, but
> would not be able to use his hands on a continuos (sic) [basis].  Sits for about 30,
> 45 minutes at a time.  Stands for about two or three hours at a time.  Can read
> basic material, but is not highly educated.

(Tr. 202). As set forth above, the ALJ did reference in the hypothetical, the length of time such a

person would be able to perform various activities.  To the extent plaintiff takes issue with the

lengths of time used by the ALJ, such are supported by the record.  In his opinion, the ALJ

specifically referred to the opinion of Dr. Dean Brown, plaintiff's treating physician, but found

such opinion to be overly restrictive.  Instead, the ALJ relied on plaintiff's own representations

saying, "the extreme limitations noted by Dr. Brown are in sharp contrast to the claimant's own

testimony of what he is currently able to do.  The claimant testified that he is able to stand for

two to three hours at a time, sit for 30-45 minutes at a time, walk ½ block and lift 10

pounds....The claimant's overall daily functioning demonstrates that he is not as limited as Dr.

Brown indicates." (Tr. 16).  The ALJ was within his authority and his role as the fact finder in

making the determinations he did.  It cannot be said the ALJ failed to consider the medical

records and reports of Dr. Brown in making the ultimate determination of non-disability.

Plaintiff's claim must fail.

## IV.
## RECOMMENDATION

THEREFORE, for all of the reasons set forth above, it is the opinion and

recommendation of the undersigned to the United States District Judge that the decision of the

defendant Commissioner be AFFIRMED.


## V.
## INSTRUCTIONS FOR SERVICE

The District Clerk is directed to send a copy of this Report and Recommendation to

plaintiff's attorney of record by certified mail, return receipt requested, and to the Assistant

United States Attorney by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 15th day of February 2006.


_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In
the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing
objections is eleven (11) days from the date of filing as indicated by the file mark on the first
page of this recommendation. Service is complete upon mailing, Fed. R. Civ. P. 5(b), and the
parties are allowed a 3-day service by mail extension, Fed. R. Civ. P. 6(e). Therefore, any
objections must be filed **on or before the fourteenth (14th) day after this recommendation is
filed**. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as
authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern
District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).